UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREW JOSEPH MARKELL,

        Plaintiff,

    v.

NANCY A. BERRYHILL,

        Defendant.

Case No. 17-cv-00792-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 21

## INTRODUCTION

Plaintiff Andrew Joseph Markell brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits.  Pending before the Court are the parties' Cross-Motions for Summary Judgment.  Pl.'s Mot., Dkt. No. 16; Def.'s Mot., Dkt. No. 21. Pursuant to Civil Local Rule 16-5, the Motions have been submitted on the papers without oral argument.  Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and the relevant legal authority, the Court **GRANTS IN PART** and **DENIES IN PART** both Motions for the reasons set forth below.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On February 13, 2013, Plaintiff filed a claim for Supplemental Security Income, alleging disability beginning on January 20, 2002.  AR 81, 175-83.  On July 16, 2013, the Social Security Administration ("SSA") denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits.  AR 97-102.  Plaintiff subsequently filed a request for reconsideration, which was denied on November 4, 2013.  AR 108-12.  On December 2, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 114-16.  ALJ Serena S. Hong conducted a video hearing

United States District Court
Northern District of California

on March 26, 2015. AR 30-64. Plaintiff testified at the hearing and was represented by Dan McCaskell, a non-attorney representative. The ALJ also heard testimony from Vocational Expert ("VE") Joel M. Greenberg.

**A.       Medical Evidence of Record**

1.       <u>Steven E. Gerson, D.O.</u>

Consultative examiner Dr. Gerson examined Plaintiff on June 6, 2013 at the request of the SSA. AR 358. Dr. Gerson described Plaintiff's reliability as average. *Id.* Plaintiff had a chief complaint of neck pain, which he has had for more than ten years. *Id.* Plaintiff's neck pain is constant and goes up into his head which causes headaches, into his middle back, and down into the left arm greater than his right. *Id.* Sneezing and coughing can increase the neck pain. *Id.* Plaintiff has difficulty with bending, moving, extending, and rotating his neck. *Id.* Plaintiff has not had neck surgery, injections, or physical therapy; although physical therapy was recommended in the past, Plaintiff's finances prevented him from obtaining it. *Id.* Plaintiff has not seen an orthopedic surgeon or a neurosurgeon for his neck pain. *Id.* He takes Tylenol with codeine and ibuprofen, which gives him quite a bit of relief of symptoms with his neck. *Id.* As time goes on, the neck pain is gradually getting worse. *Id.*

Plaintiff also reported pain in his hips, feet, and ankles. AR 359. He can have swelling of the arm and leg joints, and at times his hips and ankle joints can get weak and give out. *Id.* Plaintiff gets intermittent locking of the hips. *Id.* He has difficulty walking over 300 feet, is unable to run or jump, and has difficulty with hills and stairs. *Id.* As time goes on, these pains are gradually getting worse. *Id.*

Dr. Gerson opined Plaintiff could lift 15 pounds occasionally and 10 pounds frequently and could stand or walk up to 6 hours and sit for 6 or more hours in an 8-hour work day. AR 363. Dr. Gerson opined Plaintiff could frequently balance and kneel; occasionally climb ramps or stairs, stoop or bend, and crouch or squat; and could never crawl or climb ladders or scaffolds. *Id.* Dr. Gerson opined Plaintiff was limited occasionally in his reaching due to neck, shoulders, and above the shoulders and frequently limited in handling objects due to hands. *Id.* Dr. Gerson

identified the following environmental limitations: heights and moving machinery, due to neck, hips, feet, and ankles; and extreme temperatures, chemicals, and dust due to a history of asthma. AR 364.

Dr. Gerson further noted Plaintiff can participate in a typical conversation and is able to relate to Dr. Gerson and follow instructions. AR 362, 364. He described Plaintiff's behavior as appropriate and judgment intact. AR 362. Dr. Gerson noted Plaintiff used profanity a few times "and the word 'f***in' as an adjective and not in anger." *Id.* He described Plaintiff as not unstable. *Id.*

2.  Jason Cunningham, M.D.

Plaintiff received medical care from Dr. Cunningham starting in 2008 through July 2014. AR 317-29, 349-57, 395-408. On December 16, 2008, Plaintiff presented to Dr. Cunningham with chronic neck pain, diagnosed at Kaiser in 2001, with degenerative joint disease of C5 to C6. AR 322. Dr. Cunningham prescribed Vicodin and ordered an MRI. AR 323. Dr. Cunningham saw Plaintiff sporadically from December 2010 through December 2012, and regularly thereafter through July 2014. *See* AR 317-29, 395-408.

In July 2011, Dr. Cunningham noted Plaintiff had many concerns around anger outbursts, isolation, depression, and tearfulness. AR 351.

3.  G. Williams, M.D.

Dr. Williams, a non-examining consultant, reviewed Plaintiff's medical records, including Dr. Gerson's report, at the request of the SSA at the initial level. AR 73, 76-78. According to Dr. Williams, a prior cervical spine MRI showed multilevel degenerative disc disease, disc bulges, multilevel neuroforaminal stenosis, and some spinal stenosis. AR 73. Dr. Williams opined Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. AR 76; *see* AR 73.

4.  C. David, M.D.

Dr. David, a non-examining consultant, reviewed Plaintiff's medical records at the request

3

of the SSA at the reconsideration level and affirmed Dr. Gerson's findings, including the finding that Plaintiff could stand/walk for 6 hours and sit for 6 hours. AR 82-93.

### 5. Marion-Isabel Zipperle, Ph.D.

Clinical psychologist Dr. Zipperle performed a comprehensive psychiatric evaluation of Plaintiff at the request of the SSA on April 2, 2011. AR 336. Plaintiff complained of pain, dropping things all the time, falling, losing balance, and increased rage. *Id.* He took Vicodin and ibuprofen. *Id.* Dr. Zipperle noted Plaintiff had physical problems that kept him from working, issues with boredom which has caused him to quit jobs, problems dealing with others and authority figures, depression, and poor motivation and energy. *Id.* Dr. Zipperle noted a past medical history of neck surgery, disc problems, and motorcycle accidents and injuries over various years. AR 337.

Dr. Zipperle's mental status examination revealed Plaintiff's attitude and behavior were cautious, paranoid, hostile, and easily irritated; Plaintiff presented himself in a rambling, erratic way and was not coherent or logical in his story; Plaintiff had flashbacks, nightmares, intrusive thoughts, racing thoughts, and flights of fancy; and his mood was agitated and erratic. AR 338.

Dr. Zipperle diagnosed Plaintiff with posttraumatic stress disorder, bipolar II, major depressive disorder, alcohol dependence in remission, and antisocial personality disorder. AR 339. She assessed Plaintiff's GAF at 53. *Id.* Dr. Zipperle also noted Plaintiff's prognosis was poor due to his mood swings, aggressiveness, anger, hostility, and erratic behavior and conversation. *Id.* She further noted Plaintiff had some concentration issues and poor judgment and insight issues. *Id.* She opined Plaintiff was unable to accept instructions from supervisors or interact with coworkers and the public; had problems with special or additional instruction; was unable to maintain regular attendance in the workplace, as his psychiatric issues would get in the way; and was unable to manage stress, including normal, everyday stress in a workplace. *Id.*

### 6. Melody Samuelson, Psy.D.

On June 8, 2013, Dr. Samuelson submitted a report to the SSA based on her comprehensive psychological evaluation of Plaintiff, numerous tests, and a review of Dr.

4

Zipperle's April 2011 report. AR 368. Plaintiff reported problems with irritability and anger, chronic pain from disc problems and hip surgery, and alcohol dependence that was in remission for several years. AR 369. Plaintiff was currently depressed about his situation, since he was homeless. *Id.* Dr. Samuelson did not find evidence of feigning or exaggeration of symptoms. AR 370.

Dr. Samuelson observed Plaintiff evidenced psychomotor agitation, was extremely irritable, and wrote profanities on the paperwork. *Id.* Dr. Samuelson opined Plaintiff's thought process was coherent and organized, his thought content was relevant and non-delusional, his mood was extremely irritable, and his affect was labile and congruent with thought content. AR 371. Dr. Samuelson further opined Plaintiff's speech was not normally and clearly articulated; his speech was extremely pressured, without stuttering dysarthria, tangentiality, circumstantiality, or loosened, unusual, or blocked associations. AR 371, 375. Plaintiff presented with intelligence in the low average range. AR 371. Plaintiff could count from 20 backwards, count the months of the year backwards from December, and perform simple calculation of addition and subtraction with two digits. AR 372. Plaintiff could not attend without repeating instructions. *Id.* Plaintiff's insight and judgment presented as intact. *Id.*

Dr. Samuelson performed three clinical tests to measure Plaintiff's abilities: Trails A and B, WAIS-IV, and WMS-IV. The Trails A and B showed Plaintiff's ability to perform a task of visual search and scanning of a numerical sequence was in the low average range. AR 372. Plaintiff's increased mental flexibility and executive functioning skills were in the low average range. *Id.* On the WAIS-IV, Plaintiff demonstrated significant strength in his vocabulary. AR 373. He showed significant weaknesses in short term memory and working memory, and the speed in which he processed information was extremely low. *Id.* Plaintiff's Full Scale IQ (SS=72) was in the borderline intellectual range. *Id.* Dr. Samuelson opined this was not consistent with Plaintiff's vocabulary and choice of words when he spoke to her. AR 375. Dr. Samuelson could not obtain index scores for the WMS-IV. AR 374. Although Dr. Samuelson attempted to administer all subtests of the WMS-IV, most were aborted because Plaintiff was too

1    irritable to sustain attention long enough to understand the requirements of the tasks and perform

2    them. *Id.*

3         Dr. Samuelson diagnosed Plaintiff with Bipolar II Disorder, most recent episode

4    hypomanic; Alcohol Dependence, in remission; and Pain Disorder due to a general medical

5    condition. AR 374. She assessed Plaintiff's GAF at 48. AR 375. Dr. Samuelson deemed

6    Plaintiff's condition from a psychiatric standpoint as "fair." *Id.* She assessed Plaintiff as mildly

7    impaired in his ability to understand, remember, and carry out simple one- or two-step

8    instructions. *Id.* She further assessed Plaintiff as moderately impaired in his ability to do detailed

9    and complex instruction; to relate to and interact with co-workers and public; to maintain

10   concentration and attention, persistence and pace; to associate with day-to-day work activity,

11   including attendance and safety; to accept instructions from supervisors; to maintain regular

12   attendance in the work place and perform activities on a consistent basis; and to perform work

13   activities without special or additional supervision. AR 375-76.

**B.    Vocational Expert's Testimony**

15        VE Greenberg testified that Plaintiff previously worked as a shipping and receiving clerk,

16   which the Dictionary of Occupational Titles ("DOT") defines as medium in exertion and Skilled

17   Vocational Preparation ("SVP") of 5; worked as a salesperson of sporting goods, light in exertion

18   and SVP of 5; assisted as a loader/unloader, with a heavy exertion level and SVP of 3; worked as a

19   cashier II, light in exertion and SVP of 2; and worked as a house companion, medium in exertion

20   and SVP of 3. AR 58.

21        The VE testified that a hypothetical person of Plaintiff's age, education, and work

22   experience could not perform Plaintiff's past work where that person was limited to performing

23   work at the light exertional level but could not climb ladders, ropes, or scaffolds; could

24   occasionally stoop, crouch, crawl, and perform overhead reaching; must avoid concentrated

25   exposure to pulmonary irritants such as dust, fumes, and gases; must avoid hazards such as

26   unprotected heights and moving machinery; and was limited to simple, routine tasks with no

27   public contact and only superficial interaction with coworkers and supervisors. AR 59-60 ("It

28

would be my opinion that the exertional demands would exceed those in light of the hypotheticals. And the one job that he held where it didn't, it would require public contact through sales."). However, the VE testified that a hypothetical person with those limitations could work as a night cleaner, which the VE considered to be a light exertional level; a final inspector, with a light exertional level and SVP of 2; and small products assembly I, light exertional level and SVP of 2. AR 60-61. These jobs – night cleaner, final inspector, and small product assembly I – could be performed by the same hypothetical individual who was also limited to lifting and carrying up to 15 pounds on an occasional basis, who could lift and carry 10 pounds frequently, who could not crawl, and who must avoid concentrated exposure to extreme temperatures. AR 61. The VE further testified that a hypothetical individual with each of the aforementioned limitations and who also would be unable to complete the workday or would be absent three or more times a month would not be employable. AR 62.

When asked by Plaintiff's representative whether the third hypothetical individual was also limited to bending at the waist occasionally, the VE stated that this added limitation would not change his opinion. AR 62-63.

## C. The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v.*

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

*Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since February 19, 2013. AR 16.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, asthma, affective disorder, anxiety disorder, and personality disorder. AR 16.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 16-18.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that he is capable

of lifting/carrying up to 15 pounds occasionally and 10 pounds frequently.  AR 18.  The ALJ also found Plaintiff is precluded from crawling and climbing ropes, ladders, and scaffolds, but he retains the ability to occasionally climb ramps and stairs, balance, stoop, kneel, and crouch.  *Id.*  Plaintiff can occasionally reach overhead and frequently handle with his bilateral extremities.  *Id.*  Plaintiff should avoid concentrated exposure to pulmonary irritants, hazards of work at heights or around moving machinery, and extreme temperatures.  *Id.*  The ALJ concluded Plaintiff is limited to simple, repetitive tasks with no public contact and only superficial interaction with co-workers and supervisors.  *Id.*

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).  Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it.  20 C.F.R. § 404.1560(b)(1).  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, the ALJ determined that Plaintiff is unable to perform any past relevant work.  AR 23.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g); 404.1560(c).  The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  Here, based on the testimony of the VE, Plaintiff's age, education, work experience, and his RFC, the ALJ determined Plaintiff could perform work as a night cleaner, final inspector, and a small product assembler, all of which exist in significant numbers in the national economy.  AR 24.

**D.   ALJ's Decision and Plaintiff's Appeal**

On August 11, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled.  AR 11-25.  This decision became final when the Appeals Council declined to review it

1   on December 20, 2016.  AR 1-4.  Having exhausted all administrative remedies, Plaintiff

2   commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On July 10, 2017,

3   Plaintiff filed the present Motion for Summary Judgment.  On September 21, 2017, Defendant

4   filed a Cross-Motion for Summary Judgment.

## LEGAL STANDARD

6       This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

7   U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by

8   substantial evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*,

9   246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence means more than a

10  scintilla but less than a preponderance" of evidence that "a reasonable person might accept as

11  adequate to support a conclusion."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

12  (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).  The

13  court must consider the administrative record as a whole, weighing the evidence that both supports

14  and detracts from the ALJ's conclusion.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

15  However, "where the evidence is susceptible to more than one rational interpretation," the court

16  must uphold the ALJ's decision.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

17  Determinations of credibility, resolution of conflicts in medical testimony, and all other

18  ambiguities are to be resolved by the ALJ.  *Id.*

19      Additionally, the harmless error rule applies where substantial evidence otherwise supports

20  the ALJ's decision.  *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990).  A court may not

21  reverse an ALJ's decision on account of an error that is harmless.  *Molina v. Astrue*, 674 F.3d

22  1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56

23  (9th Cir. 2006)).  "'[T]he burden of showing that an error is harmful normally falls upon the party

24  attacking the agency's determination.'"  *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409

25  (2009)).

## DISCUSSION

27      Plaintiff argues the ALJ erred by failing to consider his limitations in standing and

walking, as well as his mental limitations.  Plaintiff also challenges the VE's testimony on the ground it conflicts with relevant agency guidance and publications.

**A.	Residual Functional Capacity**

1.	Standing and Walking Limitation

Drs. Williams, David, and Gerson opined that Plaintiff can stand or walk for 6 hours in an 8-hour workday.  AR 76, 89, 383.  Plaintiff does not dispute these findings.  Plaintiff instead argues the ALJ failed to set forth clear and convincing reasons for rejecting this limitation.  Mot. at 9-11.  Plaintiff argues the ALJ erred when she did not list standing or walking for only six hours a day as a limitation when she stated the limitations with which Plaintiff could perform light work. *Id.*; *see* AR 18.

"[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time."  SSR 83-10; *see Nerio v. Colvin*, 2015 WL 12656242, at *5 (N.D. Cal. May 4, 2015) ("Performing the full range of light work includes being able to stand or walk, off and on, 'for a total of approximately 6 hours of an 8-hour workday.'" (quoting SSR 83-10)); *Guajardo v. Astrue*, 2009 WL 2230851, at *6 (E.D. Cal. July 24, 2009) ("A full range of 'light work' contemplates the ability to stand or walk six hours out of an eight-hour work day." (citing SSR 83-10)).

Nothing in the record shows the ALJ rejected Dr. Gerson's, Dr. Williams', and Dr. David's opinions that Plaintiff is limited to standing and walking for 6 hours in an 8-hour workday.  The ALJ's finding that Plaintiff can perform light work does not contradict those opinions.  *See Garcia v. Astrue*, 2010 WL 1293376, at *8 (N.D. Cal. Mar. 31, 2010) (finding limitations of standing, walking, or sitting for 6 hours during an 8-hour workday "subsumed in the definition of light work").  Moreover, an ability to walk or stand for 6 hours is consistent with "a good deal of walking or standing."  *See Turner v. Comm'r of Soc. Sec.* ("*Turner I*"), 613 F.3d 1217, 1223 (9th Cir. 2010) (finding ALJ incorporated examining physician's observations into RFC determination where the ALJ took into account limitations that "were entirely consistent" but not identical to the

examiner's limitation).  To the extent the ALJ failed to consider Plaintiff's assessed standing and walking limitation in determining his RFC, any error was harmless because the light work limitation is fully consistent with only walking and standing for 6 hours in an 8 hour a day.

The Court therefore DENIES Plaintiff's Motion and GRANTS Defendant's Motion on this ground.

2.        Psychological Limitations

The ALJ found Plaintiff is limited to simple, repetitive tasks with no public contact and only superficial interaction with co-workers and supervisors.  AR 18, 20.  Plaintiff argues this does not reflect Dr. Samuelson's opinion that Plaintiff is moderately limited in his ability to maintain concentration and attention, persistence, and pace; maintain regular attendance; perform work activities on a consistent basis; and perform work activities without additional or special supervision.  Pl.'s Mot. at 12-13 (citing AR 375-76).  The ALJ accepted Dr. Samuelson's opinion. *See* AR 20 ("The evidence also documents emotional disorders that the undersigned finds limits the claimant to simple, repetitive tasks with no public contact and only superficial interaction with supervisors and co-workers.  This finding is based largely upon the June 2013 consultative psychological evaluation report of Dr. Melody Samuelson, Psy.D.").

"'[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."'"  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR 96-8p); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (ALJ erred in not including limitations in ability to perform rotary movement in RFC assessment).  "[A]n RFC that fails to take into account a claimant's limitations is defective."  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

The ALJ's RFC determination that Plaintiff could perform simple, repetitive tasks incorporates Plaintiff's moderate impairment in concentration, persistence, and pace.  *See also* AR 21 ("The results on mental status examination results and intelligence testing are consistent with a retained ability for simple, repetitive tasks.").  "[A]n ALJ's assessment of a claimant adequately

captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."[2] *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *Turner v. Berryhill*, 2017 WL 2814436, at *2 (9th Cir. June 28, 2017) ("An RFC determination limiting a claimant to 'simple, repetitive tasks' adequately captures limitations in concentration, persistence, or pace where the determination is consistent with the restrictions identified in the medical evidence."); *Mitchell v. Colvin*, 642 F. App'x 731, 733 (9th Cir. 2016) ("[T]he ALJ accounted for [the plaintiff's] moderate functional limitations [in concentration, persistence, and pace] in the residual functional capacity" by restricting the plaintiff to "simple, repetitive tasks."); *Sabin v. Astrue*, 337 F. App'x 617, 620-21 (9th Cir. 2009) (no error where ALJ found claimant could perform "simple and repetitive tasks on a consistent basis" despite moderate difficulties in concentration and pace)); *Bennett v. Colvin*, 202 F. Supp. 3d 1119, 1127 (N.D. Cal. 2016) ("[T]he ALJ did not err in translating his finding of a mild to moderate limitation in concentration, persistence, and pace into a restriction to light work and simple, repetitive tasks."). The ALJ's RFC need only be consistent with a doctor's assessed limitations, not identical to them. *See TurnerI*, 613 F.3d at 1223; *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." (citing *Stubbs-Danielson*, 539 F.3d at 1174)).[3]

---

[2] The Ninth Circuit has held that where there is evidence that a claimant is moderately impaired in concentration, persistence, or pace, a "hypothetical question to the vocational expert should . . . include[] not only the limitation to 'simple, repetitive work,' but also [the] moderate limitations in concentration, persistence, or pace." *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211 (9th Cir. 2009). "*Brink*, however, only opines on the completeness of vocational hypotheticals; it does not stand for any similar proposition with regard to RFC determinations." *Stephens v. Colvin*, 2014 WL 6982680, at *5 (N.D. Cal. Dec. 9, 2014). Plaintiff only challenges the ALJ's RFC determination; he does not argue the ALJ's hypotheticals to the VE were incomplete. *See* Mot. *Brink* is therefore inapposite.

[3] *But see Tucker v. Colvin*, 2015 WL 7737300, at *2 (C.D. Cal. Nov. 30, 2015) (RFC "materially incomplete" where "the ALJ accepted evidence of Plaintiff's moderate deficiencies of concentration, persistence or pace and expressly found a functional limitation resulting in failure to complete tasks in a timely manner, but the RFC only included a limitation to perform no more than simple, repetitive tasks; perform no jobs requiring any contact with the public or more than occasional interactions with co-workers and supervisors." (citation and internal quotation marks

But the ALJ's RFC determination does not include other limitations about which Dr. Samuelson opined and which the ALJ accepted.  It does not, for instance, include limitations regarding Plaintiff's moderate impairments in his ability to accept instructions from supervisors or to perform activities without special or additional supervision.  Moreover, the ALJ did not reconcile the conflict in these opposing limitations – i.e., Plaintiff's need for special supervision despite his difficulty in accepting instruction – in assessing Plaintiff's RFC.

The RFC also does not address Dr. Samuelson's opinion that Plaintiff is moderately impaired in attendance.  The VE testified that a person who was "limited to performing only simple, routine tasks with no public contact, [] only superficial interaction with coworkers and supervisors[,]" and "would be unable to complete the workday or [would be] absent three or more times a month" "would not, in my opinion, be employable."  AR 59, 62.  Thus, considering all of Plaintiff's mental limitations, the VE's testimony shows Plaintiff could not perform work.  The ALJ does not reconcile this testimony with her conclusion that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  AR 24.

That the assessed RFC does not include all of the limitations about which Dr. Samuelson opined and which the ALJ accepted constitutes material error.  Accordingly, the Court GRANTS Plaintiff's Motion and DENIES Defendant's Motion on this issue.[4]

---

omitted)); *Juarez v. Colvin*, 2014 WL 1155408, at *7 (C.D. Cal. Mar. 20, 2014) ("[T]he ALJ expressly found, consistent with the opinion of a state agency review physician, that plaintiff had a moderate limitation in maintaining concentration, persistence, and pace. [] Accordingly, under *Brink*, whose reasoning the Court finds persuasive, the ALJ's RFC determination should have included not only the limitation to unskilled work, but also a moderate limitation in maintaining concentration, persistence, and pace." (citation omitted)).

[4] Plaintiff suggests that his assessed GAF scores of 48 and 53 indicate he is unable to perform unskilled work.  *See* Mot. at 4; *see also* AR 339, 375 (assessing Plaintiff's GAF).  But "[t]he Commissioner has no obligation to credit or even consider GAF scores in the disability determination."  *McClure v. Astrue*, 2011 WL 5387406, at *2 (C.D. Cal. Nov. 7, 2011) (citing *Howard v. Comm. of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."))).  To the extent the ALJ failed to consider his GAF scores, that, in and of itself, does not constitute material error.

14

**B.      VE Testimony**

Plaintiff challenges the VE's testimony on grounds that the VE's testimony conflicts with the Social Security Administration's Program Operations Manual System ("POMS"), DOT, and the Bureau of Labor Statistics' Occupational Outlook Handbook ("OOH").  Pl.'s Mot. at 15-19.

1.      Waiver of Issue

Defendant contends that Plaintiff's failure to address these issues during the cross-examination of the VE results in a waiver of these issues.  Def.'s Mot. at 7-8.  Plaintiff acknowledges Defendant's argument but does not substantively address it.  *See* Reply at 8 ("The Commissioner argues that Markell waived the issue.").  Plaintiff instead reiterates that once he demonstrated an inability to perform past relevant work, the burden shifted to Defendant to prove the existence of other work.  *Id.*

"[C]laimants who are represented by counsel 'must raise all issues and evidence at their administrative hearings to preserve them on appeal.'"  *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017) (quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999)) (edits omitted).  However, the Ninth Circuit has considered arguments raised for the first time on appeal where the issue is "a pure question of law, and the Commissioner had the opportunity to respond to the argument on appeal."  *Silveira v. Apfel*, 204 F.3d 1257, 1260 n.8 (9th Cir. 2000); *see id.* (distinguishing *Meanel* on ground that "[t]his is not a case in which the claimant rests her arguments on additional evidence presented for the first time on appeal, thus depriving the Commissioner of an opportunity to weigh and evaluate that evidence[.]").

While Plaintiff is now represented by counsel, he was represented by a non-attorney representative at the hearing.  AR 14, 32.  Plaintiff's non-attorney representative did not cross-examine the VE about any inconsistencies between the VE's testimony and agency guidelines.  *See* AR 62-63.  This does not preclude Plaintiff from raising these issues now.  Defendant cites no case law extending *Meanel* to non-attorney representatives.  *See also Parent v. Astrue*, 2011 WL 13136530, at *3 (D. Mont. Aug. 15, 2011), *aff'd*, 521 F. App'x 604 (9th Cir. 2013) ("Because [the plaintiff] was assisted by a non-attorney representative, rather than attorney, the Court will not go

15

so far as to definitely say that [the plaintiff] has waived his right to raise this argument on appeal.").  Even if *Meanel* applied to non-attorney representatives, Ninth Circuit

> law is clear that a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency."

*Lamear*, 865 F.3d at 1206 (quoting *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015)); *see* SSR 00-4p ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.").  Moreover, Defendant had the opportunity to and did respond to Plaintiff's arguments.  *See* Def.'s Mot. at 8-11.  Accordingly, the Court finds it may consider these issues.

### 2.    Superficial Interaction/POMS

Plaintiff argues "[t]he ALJ failed to square the vocational expert testimony with agency policy describing critical functions of unskilled work activity[,]" namely the ability to accept criticism. Pl.'s Mot. at 16.  Plaintiff thus appears to contend that a person limited to superficial interactions with supervisors cannot perform unskilled work.  He cites no legal support for this proposition.

"Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).  "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  SSR 85-15.

Plaintiff fails to show any conflict between the ALJ's RFC that Plaintiff is limited to

United States District Court
Northern District of California

"superficial interaction with co-workers and supervisors" and the VE's testimony that Plaintiff can perform unskilled work. The ALJ made no finding that Plaintiff could not accept criticism. Dr. Samuelson opined that Plaintiff is moderately impaired in his ability to relate to and interact with co-workers and moderately impaired in his ability to accept instructions from supervisors (AR 375), limitations which the ALJ included in her RFC determination (AR 18) and in her questions to the VE (AR 59). Dr. Samuelson did not offer an opinion that Plaintiff is limited in responding appropriately to criticism. *See* AR 375-76. Plaintiff points to no evidence of such elsewhere in the record.

Plaintiff offers no support for his contention that "the need for criticism" exceeds superficial interactions with supervisors. *See* Mot. at 16. Plaintiff's citation to a dictionary definition of "superficial" is not persuasive. *See id.* ("Superficial interaction concerns only the obvious or apparent." (citing Merriam-Webster Dictionary)). Plaintiff's reliance on POMS is also misplaced. "POMS guidance is not binding either on the ALJ or on a reviewing court." *Shaibi v. Berryhill*, 870 F.3d 874, 880 (9th Cir. 2017); *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010) ("POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ."). "POMS may be entitled to respect under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), to the extent it provides a persuasive interpretation of an ambiguous regulation, but it does not impose judicially enforceable duties on either this court or the ALJ." *Carillo-Yeras v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011) (internal quotation marks and citations omitted). Plaintiff fails to explain why a specific regulation is ambiguous so as to justify reliance on POMS in considering whether Plaintiff can perform unskilled work.[5]

Accordingly, there was no conflict for the ALJ to resolve between the VE's testimony and

---

[5] Plaintiff contends "mental abilities, describing the ability to carry out certain mental activities as potentially reducing the ability to perform past or other work" is an "ambiguous concept" which is clarified in POMS. Pl.'s Mot. at 15 (citing 20 C.F.R. § 416.945(c); POMS DI 25020.010). Section 416.945(c) concerns evaluation of a claimant's mental capabilities in determining his or her RFC. It does not address unskilled work. Plaintiff does not explain why 20 C.F.R. § 416.968(a), which defines unskilled work, is ambiguous.

the ALJ's RFC determination that Plaintiff can perform unskilled work with superficial interaction with supervisors and co-workers. The Court DENIES Plaintiff's Motion and GRANTS Defendant's Motion on this ground.

### 3. DOT

The VE testified that Plaintiff could perform three types of work: a night cleaner, final inspector, and small product assembler I. AR 60-61. The ALJ accepted this testimony, finding it "consistent with the information contained in the Dictionary of Occupational Titles." AR 24. Plaintiff maintains the VE's testimony deviates from the DOT. Pl.'s Mot. at 17-19.

Plaintiff argues the ALJ failed to reconcile the VE's testimony that Plaintiff could work as a janitor, which the DOT describes as "heavy work." Pl.'s Mot. at 17; *see* DICOT 381.687-014. The DOT is a source of administrative notice. 20 C.F.R. § 404.1566(d)(1). Indeed, "the best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); *see* SSR 00-4p ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy."). "Presumably, the opinion of the VE would comport with the DOT's guidance." *Lamear*, 865 F.3d at 1205; *see* SSR 00-4p ("Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT."). "But '[i]f the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the Dictionary, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled.'" *Id.* (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016)). But "the conflict must be 'obvious or apparent' to trigger the ALJ's obligation to inquire further." *Id.* (citing *Gutierrez*, 844 F.3d at 808).

The VE acknowledged that "[t]he DOT exertional level is heavy[.]" AR 60. But "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE . . . may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p. Based on his observation and survey of office cleaner positions, the VE testified a night cleaner is a light

18

exertional level. *Id.* Taking into consideration Plaintiff's limitations that, among other things, Plaintiff "is limited to performing work at the light exertional level" (AR 59), the VE reduced the number of night cleaner positions by 90%, finding 147,000 jobs nationally and 15,000 jobs statewide (AR 60). The VE's testimony that Plaintiff could perform work as a night cleaner accounted for the fact that Plaintiff is limited to light work and was not inconsistent with the DOT. The ALJ therefore recognized the conflict and corrected for it by reducing the number of jobs by 90% to include only those positions that required light work.

    4.    <u>OOH</u>

Plaintiff argues the VE's testimony that Plaintiff could perform work as a final inspector and small products assembler I are inconsistent with the ALJ's finding that Plaintiff can perform unskilled work. Pl.'s Mot. at 18-19. Plaintiff does not challenge the VE's testimony regarding job numbers. *See id.* Rather, Plaintiff contends the OOH provides that these positions require moderate on-the-job training, which the OOH defines as up to 12 months of experience and/or informal training. *Id.* An unskilled job, however, is one that "a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 416.968(a).

As with the DOT, the Commissioner takes administrative notice of the OOH. 20 C.F.R. § 416.966(d)(5). But the OOH is not binding; rather, "the regulations simply identify the . . . OOH as [an] example[] of materials the Commissioner may consider." *Schoux v. Colvin*, 2016 WL 3194988, at *3 (N.D. Cal. June 9, 2016) (citing 20 C.F.R. § 404.1566(d)(2), (5)). Plaintiff does not argue and cites no authority for the proposition that an ALJ must resolve discrepancies between a VE's testimony and the OOH. *See Gandara v. Berryhill*, 2017 WL 4181091, at *4 (E.D. Cal. Sept. 20, 2017) (rejecting argument "that an ALJ must *sua sponte* identify and take administrative notice of the educational requirements in the OOH, compare them with the VE's hearing testimony, and determine any inconsistencies"); *Schoux*, 2016 WL 3194988, at *3 ("The regulations nowhere indicate that [the OOH is] definitive or controlling, and there is no evidence that the [VE] or the ALJ consulted the . . . OOH."). Social Security Ruling 00-4p requires an ALJ

to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." That ruling does not, however, discuss or impose a similar duty for discrepancies between a VE's testimony and the OOH. *See* SSR 00-4p; *Schoux*, 2016 WL 3194988, at *3 (because the vocational expert testified that the identified jobs were consistent with the DOT, Social Security Ruling 00-4p did not impose a duty upon the ALJ to seek any further explanation from the vocational expert regarding the identified jobs."); *Ambriz v. Berryhill*, 2017 WL 3911572, at *4 (C.D. Cal. Sept. 6, 2017) ("Plaintiff has failed to identify any authority that the VE or the ALJ were bound by [the OOH], or that the ALJ was required to ask about any alleged conflict.").

The VE testified that the jobs he identified were consistent with the DOT. AR 62. Accordingly, to the VE's testimony conflicted with the OOH, the ALJ was not required to address any such conflict.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion and **DENIES** Defendant's Motion as to the issue of whether the ALJ's RFC determination accounts for Plaintiff's psychological limitations. The Court **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion on the remaining issues.

In reviewing a Social Security Commissioner's decision, a court may remand the case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Typically, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Moreover, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (reversing and

remanding for the consideration of new evidence instead of awarding benefits).

The Court **REMANDS** this case for further administrative proceedings so the ALJ can fully consider Dr. Samuelson's opinion about Plaintiff's mental limitations in her RFC determination and, if necessary, to further develop the record to determine whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform in light of all of his limitations.  *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("Because neither the ALJ nor the vocational expert had the full picture before them, remand for further proceedings is particularly appropriate.").  As this evidence may affect other portions of the decision, the ALJ shall also determine if any further evaluation is required based on the issues Plaintiff raises here.

**IT IS SO ORDERED.**

Dated: December 11, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge